<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRITTANY K.,<br><br>              Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>              Defendant. | Civil Action No. 25-04136 (GC)<br><br>**<u>MEMORANDUM OPINION</u>** |

**<u>CASTNER, District Judge</u>**

**THIS MATTER** comes before the Court upon Plaintiff Brittany K.'s[1] appeal from the final decision of the Commissioner of the Social Security Administration (Commissioner)[2] denying Plaintiff's application for Social Security Disability (SSD) under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. (ECF Nos. 1, 6.) The Commissioner opposed, and Plaintiff replied. (ECF Nos. 10, 11.) After careful consideration of the entire record, including the entire Administrative Record, the Court decides this matter without oral argument in accordance with Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Court **AFFIRMS** the Commissioner's final decision.

---

[1]     Plaintiff is identified by first name and last initial. *See* D.N.J. Standing Order 2021-10.

[2]     Frank Bisignano became Commissioner of the Social Security Administration on May 7, 2025. This change has no bearing on the instant matter. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

I.      **BACKGROUND**

A.      **Procedural Background**

Plaintiff has a high school education and was 28 years old on her date last insured of June 30, 2021.[3]  (AR 38.)[4]  On January 27, 2022, Plaintiff filed an application for SSD, alleging that she became disabled as of November 27, 2018.[5]  (*Id.* at 21, 484-493.)  Plaintiff alleged that she could not work due to "[b]lind or low vision," diabetes, anxiety, depression, bipolar disorder, post-traumatic stress disorder (PTSD), schizophrenia, "[h]ands lacking a 3rd knuckle in fingers," "[d]islocated tendon in right[](dominant elbow," and "[b]ack problems."  (*Id.* at 693.)  This application was denied on June 6, 2022.  (*Id.* at 21, 281-285.)  Upon reconsideration, Plaintiff's claim was denied again on September 10, 2022.  (*Id.* at 21, 293-297.)  On September 26, 2022, Claimant filed a request for a hearing before an Administrative Law Judge (ALJ).  (*Id.* at 21, 303-304.)  That hearing took place on May 7, 2024.  (*Id.* at 21, 51-87.)

On June 14, 2024, the ALJ issued Plaintiff an unfavorable decision, finding Plaintiff not disabled.  (*Id.* at 18-50.)  On August 7, 2024, Plaintiff requested a review of the ALJ's decision

---

[3]      The relevant time period for SSD is the alleged onset date of disability through the date last insured.  The "date last insured" refers to a status requirement for entitlement to disability benefits as defined under the Social Security Act.  *See* 42 U.S.C. § 423(a)(1)(A), (c)(1).  "You are entitled to disability benefits while disabled before attaining full retirement age . . . if . . . [y]ou have enough social security earnings to be insured for disability[.]"  20 C.F.R. § 404.315(a)(1).  Plaintiff does not contest Defendant's representation of the relevant time period in this case.

[4]      "AR" refers to the Administrative Record, available at ECF No. 5.  This Opinion cites the internal page numbers when referring to the Administrative Record.  Page numbers for all other docket citations refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[5]      Plaintiff previously filed an application for SSD on March 18, 2019, alleging she became disabled on December 1, 2018.  (AR 21.)  That application was denied by an ALJ and that decision was upheld by the Appeals Council.  (*Id.*)  The ALJ noted that because the listings for impairments have since changed, res judicata does not apply in this case.  (*Id.*)

before the Appeals Council, (*id.* at 469-470), and on April 16, 2025, the Appeals Council denied

Claimant's request for review, (*id.* at 1-6).  The ALJ's decision thus became the Commissioner's

final decision.  (*Id.*)

On May 12, 2025, Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g).  (ECF

No. 1.)  Plaintiff raises two arguments.  First, Plaintiff contends the ALJ's residual functional

capacity (RFC)[6] finding is unsupported by substantial evidence.  (ECF No. 6 at 10-18.)[7]  Second,

Plaintiff asserts that the ALJ's finding that Plaintiff could engage in alternative work at step five

of the RFC analysis was unsupported by substantial evidence.  (*Id.* at 18-21.)

### B.    The ALJ's Decision

The ALJ used the requisite five-step sequential evaluation process to determine that

Claimant was not disabled.  (AR 22-23.)  *See also* 20 C.F.R. § 416.920(a)(4) (describing the five-

step process).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social

Security Act through June 30, 2021, and "did not engage in substantial gainful activity during the

period from her alleged onset date of November 27, 2018 through her date last insured of June 30,

2021[.]"  (AR 24.)

At step two, the ALJ found that Plaintiff "had the following severe impairments: congenital

deformities in the bilateral hands and feet and the right upper extremity; depressive disorder;

personality disorder; and learning disorder/borderline intellectual functioning[.]"  (*Id.*)  The ALJ

concluded that these medically determinable, severe impairments "significantly limit the

---

[6]    Residual functional capacity (RFC) is defined as "the most you can still do despite your
limitations."  20 C.F.R. § 416.945(a)(1).

[7]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the
Court's e-filing system and not the internal pagination of the parties.

[Plaintiff's] ability to perform basic work activities[.]" (*Id.*) The ALJ noted that "the undersigned has fully considered the nature and extent of the claimant's psychiatric symptoms, regardless of the specific diagnosis." (*Id.*) The ALJ also found that there was evidence Plaintiff's body mass index (BMI) fell in the range of obesity and Plaintiff "was also diagnosed with myopic astigmatism in the bilateral eyes;" however, the ALJ found that these impairments were non-severe. (*Id.*) Lastly, the ALJ considered Plaintiff's allegations of disability due to low back pain and knee pain and migraine headaches, but the ALJ concluded "these alleged impairments were not medically determinable." (*Id.* at 24-25.)

At step three, the ALJ found that none of Plaintiff's impairments nor any combination of impairments met or medically equaled the severity of any of the impairments listed in the applicable regulation. (*Id.* at 25-28.) *See also* 20 C.F.R. § 416.925(a) (regulation pointing ALJs to "appendix 1 of subpart P of part 404 of this chapter").

At step four, the ALJ conducted an RFC assessment to determine what work Plaintiff was capable of. (AR 28-38.) The ALJ concluded that Plaintiff:

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, or scaffolds; she could perform other postural activities on an occasional basis; she could never be exposed to unprotected heights, dangerous moving machinery, or excessive vibration (such as that found in hand-held power tools); and she could occasionally reach overhead with the right, dominant upper extremity. She could understand, remember, and carry out simple instructions and perform simple tasks for two-hour blocks of time throughout the workday consistent with regularly scheduled breaks and lunch; she needed an environment with no more than incidental contact with the general public, meaning dealing with the public could not be part of job duties, but she could tolerate very brief encounters, such as passing someone in the hallway; she needed an environment where tasks were performed in a solitary manner, but she could hand off products or objects to coworkers; she could interact with supervisors on routine matters on an occasional basis; and she could adapt to occasional, routine changes.

4

(*Id.* at 28.)  To arrive at this conclusion, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  (*Id.* at 28-29 (citing 20 C.F.R. § 404.1529 and Social Security Ruling (SSR) 16-3p (Evaluation of Symptoms in Disability Claims), 2017 WL 5180304 (Oct. 25, 2017)).)  The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c."  (*Id.* at 29.)

In considering Claimant's symptoms, the ALJ stated that she must follow a two-step process.  (*Id.*)  First, the ALJ must determine whether "there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  (*Id.*)  Second, if there is such an impairment, the ALJ must evaluate "the intensity, persistence, and limiting effects" of the symptoms "to determine the extent to which they limit the claimant's work-related activities."  (*Id.*)

Applying these standards, the ALJ reviewed the record and found step one satisfied.  (*Id.* at 29-30.)  The ALJ then proceeded to step two and found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (*Id.* at 30.)

The ALJ then discussed Plaintiff's statements about her symptoms and the objective medical evidence the ALJ considered in her RFC assessment.  (*Id.* at 30-35.)  The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent because "the record reflects that the claimant's mental health symptoms were largely stable on medications and with individual therapy during the relevant period."  (*Id.* at 30.)  Subsequently, the ALJ discussed the role that opinion evidence played in her RFC assessment.  (*Id.* at 35-38.)  The ALJ found the prior administrative findings of stage agency psychological

consultants Dr. Cormier and Dr. Conger and state agency medical consultant Dr. Shahinian, "generally persuasive[.]" (*Id.* at 35-36, 36-37.) The ALJ found the opinion of psychiatrist Dr. Knox unpersuasive "because Dr. Knox did not offer an opinion as to functional limitations despite indicating that the claimant was not capable of managing her own funds due to symptoms and despite assessing . . . moderate symptoms and/or limitations." (*Id.* at 36.) The ALJ found the prior administrative findings of state agency psychological consultants Drs. Teissy Meza, Fred Eisner, and J. Patrick Peterson unpersuasive because their findings were not supported by the record. (*Id.*) The ALJ found prior administrative findings of state agency medical consultants Drs. R. James Mabry, Algernon Phillips, Isaac Moore, and Dennis Pacl unpersuasive because they were not fully supported by medical evidence and inconsistent with other opinions in the record. (*Id.* at 37.) The ALJ found the opinion of consultative medical examiner Dr. Chase Foy unpersuasive because it was vague. (*Id.*) Lastly, the ALJ found a third-party function report from Plaintiff's mother was unpersuasive because, like Plaintiff's subjective complaints, it was not fully consistent with the evidence. (*Id.* at 37-38.)

The ALJ based her RFC assessment on the above considerations and noted that Plaintiff had no past relevant work. (*Id.* at 38.) Finally, at step five, the ALJ considered whether jobs exist in the national economy that Plaintiff could perform given her age, education, work experience, and RFC. (*Id.* at 38-39.) Based on hypothetical questions posed by the ALJ, a vocational expert testified that Plaintiff could perform jobs such as "mail clerk," "domestic laundry worker," and "housekeeping cleaner." (*Id.* at 38-39.) The ALJ determined that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles (DOT). (*Id.* at 39.) Therefore, the ALJ concluded that Plaintiff "was capable of making a successful adjustment to other work that existed

in significant numbers in the national economy." (*Id.*)  As a result, the ALJ concluded that Plaintiff was not disabled for SSD purposes.  (*Id.* at 39-40.)

## II.   LEGAL STANDARD

### A.   Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).  In conducting this review, the Court is "not permitted to re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citation omitted).  Instead, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and "supported by substantial evidence." *Gober v. Matthews*, 574 F.2d 772, 775-76 (3d Cir. 1978) (citation omitted).

Substantial evidence is "defined as 'more than a mere scintilla'; it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Hagans v. Comm'r Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)).  Evidence is not substantial "if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).  "Where the ALJ's findings of fact are supported by substantial evidence," the Court is "bound by those findings, even if [it] would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Legal issues, in contrast, are subject to a plenary or de novo review. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019) ("We exercise plenary review over legal conclusions reached by the Commissioner . . . .") (quoting *Chandler*, 667 F.3d at 359).

### B.      Determining Disability

To be eligible for SSD due to disability under the Social Security Act, a claimant must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).   The individual's impairment must be severe to the point that the individual cannot engage in his or her previous work or in "any other kind of substantial gainful work which exists in the national economy," *i.e.*, work that exists in significant numbers either in the region where the individual lives or in several regions of the country.   42 U.S.C. § 1382c(a)(3)(B); *Plummer*, 186 F.3d at 427-28.  A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). Disability determinations are made individually "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000).

### C.      Sequential Evaluation

The Social Security Administration has developed a sequential, five-step process for evaluating disability claims.  The process considers whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)).  "The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled." *Rios v. Comm'r Soc. Sec.*, 444 F. App'x 532,

534 (3d Cir. 2011) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the ultimate burden of proof at the first four steps, at which point the burden shifts to the Commissioner at the fifth step. *See Hess*, 931 F.3d at 201 ("The burden of proof is on the claimant at all steps except step five, where the burden is on the Commissioner of Social Security.").

## III.    <u>DISCUSSION</u>

Plaintiff makes two arguments in support of her appeal.  First, she argues that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence.  Second, and closely related to the first argument, Plaintiff contends that the work the ALJ found Plaintiff could engage in at step five of the analysis was not supported by substantial evidence.  On review of the ALJ's decision (*see* AR 18-50) and the Administrative Record (*see generally* ECF No. 5), the Court finds good cause to affirm the Commissioner's decision.

### A.    The ALJ's RFC Determination

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence and did not appropriately account for Plaintiff's physical and mental limitations.  (ECF No. 6 at 10-18.)  Plaintiff contends that despite finding that Plaintiff had congenital deformities of the hands, feet, and right arm, the ALJ did not include "meaningful restriction at all in the ability [of Plaintiff] to use her hands or arms" and otherwise discounted Plaintiff's physical limitations.  (*Id.* at 12.)  Regarding mental limitations, Plaintiff asserts that the RFC does not appropriately account for those limitations but instead "the ALJ both cherry picks times when [Plaintiff] was doing better" and improperly disregards evidence.  (*Id.* at 14-16.)  Lastly, Plaintiff argues that "[t]he ALJ also fails to articulate in any meaningful way the significan[ce] of [Plaintiff's] learning disability."  (*Id.* at 17.)  Defendant responds that the ALJ's RFC is consistent with the evidence in the record, and Plaintiff's argument "amounts to a request to re-weigh the evidence to reach a different conclusion," which is not permissible.  (ECF No. 10 at 7-10.)

9

A claimant's RFC is the most that the claimant can do despite her limitations.  20 C.F.R. § 416.945(a)(1).  When conducting an RFC assessment, the ALJ is not required to provide a "written analysis about how [the ALJ] considered each piece of evidence[.]"  *Joseph P. v. Comm'r Soc. Sec.*, Civ. No. 21-13524, 2023 WL 1929945, at \*5 (D.N.J. Feb. 10, 2023) (first alteration in original) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).  Instead, regulations reflect a "reasonable articulation standard" in which the "decision need only 'allow a subsequent reviewer . . . to trace the path of an adjudicator's reasoning.' "  *Id.* (quoting 82 Fed. Reg. at 5858).  In tracing this path, "[a]n ALJ 'must give some indication of the evidence which [s]he rejects and h[er] reason(s) for discounting such evidence.'"  *Tedesco v. Comm'r Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020) (citation omitted). But "the ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice."  *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  Further, an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis."  *Jones v. Barnhart,* 364 F.3d 501, 505 (3d Cir. 2004).

Here, the ALJ properly considered and addressed Plaintiff's impairments in the RFC.  The Court considers Plaintiff's arguments regarding the consideration of her physical and mental limitations in turn.

### 1. *Physical Limitations*

Regarding physical limitations, Plaintiff contends that although the ALJ found at step two that Plaintiff's congenital deformities in the bilateral hands and feet and the right upper extremity were a severe impairment, the ALJ imposed no "meaningful restriction at all in [Plaintiff's] ability to use her hands or arms" in the RFC.  (ECF No. 6 at 12.)  Plaintiff refers the court to photographs of Plaintiff's hands in the record as evidence that Plaintiff requires additional physical limitations. (*Id.* (citing AR 1546-1547); ECF No. 11 at 6.)

However, "no incantations are required at step[] four . . . simply because a particular finding has been made at step[] two[.]"  *Hess*, 931 F.3d at 209.  The ALJ must only explain how the RFC reflects what a claimant can do despite the identified limitations, *id.* at 209-10, and the ALJ did as much here.  The RFC includes several physical limitations, including that Plaintiff "could never climb ladders, ropes, or scaffolds; she could perform other postural activities on an occasional basis; she could never be exposed to unprotected heights, dangerous moving machinery, or excessive vibration (such as that found in hand-held power tools); and she could occasionally reach overhead with the right, dominant upper extremity."  (AR 28.)  To reach this conclusion, the ALJ considered Plaintiff's own testimony as to her hands and feet, medical evidence from physical examinations in 2017, 2018, 2019, and, and the prior administrative findings of a doctor in determining the RFC.  (*Id.* at 29-30, 33, 35, 36-37.)

Regarding the photographs cited by Plaintiffs, the ALJ acknowledged them and noted: "pictures of the claimant's bilateral hands are in the record; however, as the undersigned is not a medical provider or specialist, the undersigned cannot comment further on these pictures."  (*Id.* at 34.)  This was appropriate, as an "ALJ is not a doctor and must not substitute her own judgment as to medical issues for actual medical evidence."  *LaMontagne v. Colvin*, Civ. No. 14-916, 2015 WL 1811681, at *6 (M.D. Pa. Apr. 21, 2015); *George-Jellison v. Comm'r Soc. Sec.*, Civ. No. 08-0359, 2009 WL 331418, at *3 (D.N.J. Feb. 10, 2009) (quoting *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000)) ("An ALJ 'may not make speculative inferences from medical reports' and cannot make decisions about medical evidence based on 'his or her own credibility judgments, speculation, or lay opinion.'").  And "it is not for this [c]ourt, upon review, to decide the facts anew, reweigh the evidence, or substitute its own judgment to decide whether a claimant is or is

not disabled." *Wilson v. Apfel*, Civ. No. 98-6511, 1999 WL 993723, at *6 (E.D. Pa. Oct. 29, 1999), *aff'd,* 225 F.3d 651 (3d Cir. 2000).

Plaintiff also contends that the ALJ discounted Plaintiff's physical limitations because the ALJ found that Plaintiff can play video games. (*See* ECF No. 6 at 13.) This is incorrect; playing video games was one example of many regarding Plaintiff's capabilities that the ALJ relied on in formulating the RFC. The ALJ also noted that, apart from playing video games, Plaintiff could engage in other activities despite her limitations, including: "car[ing] for her cat, prepar[ing] simple meals, perform[ing] chores when told to by her mother, shop[ing] by computer, socializ[ing] with others on occasion, and play[ing] video games." (AR 30 (citing AR 783-793).) The ALJ also noted that despite her congenital deformities, "the claimant did not have evidence of manipulative or gait deficits on physical exams during the relevant period." (*Id.* (citing AR 1233-1274, 1585-1587); *see also id.* at 37 (citing AR 670-687, 783-793, 1136-1167).) This is consistent with the medical evidence in the record.[8] "In order to qualify for benefits, a person must be disabled as defined by the Social Security Act and its accompanying regulations as of his date last insured." *Corley v. Barnhart*, 102 F. App'x 752, 754 (3d Cir. 2004). While Plaintiff did testify at the hearing in 2024 that she stopped playing video games "[v]ery recently. Like a couple months ago. Because the pain has just gotten too bad[,]" (*id.* at 73), and medical evidence showed Plaintiff sought treatment for chronic pain affecting her knees, low back, neck, right elbow, and fingers in October 2021 and September 2022, (*id.* at 34-35), this evidence post-dates the relevant period for

---

[8]    In further support of her argument that the ALJ ignored the impact of Plaintiff's physical impairments, Plaintiff cites to testimony from the vocational expert in which the expert agreed that "if the individual's ability to use their hands and fingers for handling and fingering was decreased to no more than occasional," the jobs the vocational expert identified "would be precluded with that restriction in mind." (AR 82-83; *see also* ECF No. 6 at 13-14.) However, this ignores the fact that the ALJ found, after considering medical and opinion evidence in the record, that Plaintiff's physical impairments did not require such a limitation.

this disability decision, which is from November 27, 2018 through June 30, 2021, (*id.* at 21). As such, the ALJ was not required to consider this evidence. *See, e.g.*, *Mease v. Berryhill*, Civ. No. 17-2327, 2018 WL 6521830, at *5 (E.D. Pa. Dec. 12, 2018) ("In assessing whether a claimant [became disabled on or before the date last insured], an ALJ is not required to consider any medical evidence or treatment notes that post-date when a claimant was last insured."); *Greco v. O'Malley*, Civ. No. 23-445, 2024 WL 1195707, at *1 n.2 (W.D. Pa. Mar. 20, 2024) ("While an ALJ can consider evidence after a claimant's date last insured, such evidence is relevant only so far as it pertains to the claimant's condition during the relevant period [prior to the date last insured].").

### 2.    *Mental Limitations*

Plaintiff also argues the ALJ did not adequately account for Plaintiff's mental limitations in formulating the RFC, including failing to account for Plaintiff's intellectual deficits and difficulties relating to other people. (ECF No. 6 at 16.) Plaintiff cites to prior consultative examinations in the record in support of her argument that Plaintiff has a long history of mental health challenges, and contends the ALJ "cherry picks times when [Plaintiff] was doing better[.]" (*Id.* at 15.) Plaintiff also argues that the ALJ improperly found "all of the reports going back to 2008 [in the administrative record] are not persuasive because they relate to periods either before or after the period before [the ALJ]." (*Id.* at 16.)

Regarding Plaintiff's mental limitations in the RFC, the ALJ found that:

> [Plaintiff] could understand, remember, and carry out simple instructions and perform simple tasks for two-hour blocks of time throughout the workday consistent with regularly scheduled breaks and lunch; she needed an environment with no more than incidental contact with the general public, meaning dealing with the public could not be part of job duties, but she could tolerate very brief encounters, such as passing someone in the hallway; she needed an environment where tasks were performed in a solitary manner, but she could hand off products or objects to coworkers; she could interact with supervisors on routine matters on an occasional basis; and she could adapt to occasional, routine changes.

13

(AR 28.)  This is consistent with the medical evidence.  The ALJ reviewed Plaintiff's subjective testimony, medical evidence, consultative exam notes, and medical opinion evidence.  (*Id.* at 29-33, 35-38.)  The ALJ noted that although "the record documents longstanding mental health symptoms," the record evidence also "reflects that the claimant's mental health symptoms were largely stable on medications and with individual therapy during the relevant period" and "[t]reating providers also regularly described the claimant as stable with treatment and as presenting with average intellectual functioning." (*Id.* at 30-31 (citing AR 1136-1167, 1233-1361.) The ALJ's decision is only required to include "sufficient development of the record and explanation of findings to permit meaningful review," and the ALJ satisfied that standard here. *Jones*, 364 F.3d at 505.  As previously discussed, "'[t]here is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record.'" *Bruce T. v. Kijakazi*, Civ. No. 21-20289, 2022 WL 10025372, at *4 (D.N.J. Oct. 17, 2022) (first alteration in original) (quoting *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004)).

Further, while the ALJ does acknowledge evidence indicating that Plaintiff was "doing better" during the relevant time period, the ALJ also considered medical evidence documenting fluctuations in Plaintiff's mental health symptoms.  (AR 31-32.)  The ALJ found that medical evidence indicated "the claimant presented with intact memory, concentration, and ability to interact with the consulting provider," before beginning mental health treatment.  (*Id.* at 30 (citing AR 1588-1594).)  Once Plaintiff began treatment, "[t]reating providers also regularly described the claimant as stable with treatment and as presenting with average intellectual functioning." (*Id.* (citing AR 1136-1167, 1233-1361).)  The ALJ acknowledged that although medical evidence indicated Plaintiff's mental health symptoms worsened at times during the relevant time period, the evidence also indicated that "the claimant did not require emergency treatment or a higher level

14

of care to address mental health symptom exacerbations during the relevant period." (*Id.*) The Court disagrees with Plaintiff's contention that the ALJ "cherry picked" evidence to support her RFC determination. (ECF No. 6 at 13, 15.) The ALJ relied upon a variety of evidence to inform the RFC, and as other courts have held:

> upon review of the record in its entirety, the [c]ourt does not find that certain evidence was obviously "cherry-picked" because it was helpful while other important evidence was conveniently overlooked, nor does the [c]ourt find that consideration of all the evidence clearly would have led to a finding of disability. Although [the p]laintiff may feel that the ALJ did not properly weigh all the appropriate evidence in reaching conclusions, the ALJ was simply not required to consider and discuss every piece of evidence in the [extensive] record. Moreover, the Court cannot now choose to re-weigh the evidence simply because Plaintiff does not agree with the ALJ's decision.

*Brisbine v. Saul*, Civ. No. 19-1038, 2020 WL 5759959, at *1 n.1 (W.D. Pa. Sept. 28, 2020) (citation omitted); *see also Candace D. v. Kijakazi*, No. Civ. No. 23-01151, 2024 WL 913218, at *8 (D.N.J. Mar. 4, 2024) ("It is well-established that an ALJ's decision may not be overturned simply because the Plaintiff disagrees with the ALJ's weighing of the evidence.").

Plaintiff also objects to the ALJ's determination that, because certain medical evidence pre- or post-dated the relevant period of disability, that evidence was unpersuasive. (ECF No. 6 at 16, 17.) But "[a]n ALJ may reject evidence that predates the relevant period and, therefore, may limit her analysis to the medical evidence in the record that follows [the p]laintiff's alleged onset date." *Courtney W. v. Comm'r Soc. Sec.*, Civ. No. 23-22865, 2024 WL 5244299, at *6 (D.N.J. Dec. 30, 2024) (quoting *Gonzalez v. Colvin*, 2016 WL 1463990, at *4 (D.N.J. Apr. 13, 2016)); *see also Rosa P. v. Comm'r Soc. Sec.*, Civ. No. 20-12284, 2022 WL 2532838, at *4 (D.N.J. July 7, 2022) ("While an ALJ should consider a claimant's history prior to the relevant period to inform a conclusion as to whether or not the claimant is disabled, the crux is whether there is evidence of a disability during the relevant period."). The ALJ did not err here by finding these medical opinions

15

"unpersuasive because they do not pertain to the claimant's functioning during the relevant period." (AR 37.)

Lastly, Plaintiff argues that the ALJ "fails to articulate in any meaningful way the significan[ce] of [Plaintiff's] learning disability." (ECF No. 6 at 17.) The Court disagrees. "In the [RFC], the ALJ must include a claimant's credibly established limitations only, not all limitations a claimant alleges." *Ayesha L. v. Dudek*, Civ. No. 24-04410, 2025 WL 3079291, at *8 (D.N.J. Nov. 4, 2025). At step two of the analysis, the ALJ found that Plaintiff had the "severe impairment" of a "learning disorder/borderline intellectual functioning." (AR 24.) But again, a finding at step two does not require any specific limitation in the RFC; the ALJ must only explain how the RFC reflects what a claimant can do despite those identified limitations. *Hess*, 931 F.3d at 209-10. Based on the requirements identified in the relevant listing, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the severity of any of the impairments listed in the applicable regulation. (AR 27-28.) The ALJ further noted that the RFC was informed by the evidence that treating providers described the Plaintiff "as presenting with average intellectual functioning." (*Id.* at 30 (citing AR 1136-1167, 1233-1361).) The "[o]bjective testing" that found Plaintiff to have an IQ of 79, a limitation that Plaintiff argues was not properly incorporated into the RFC, (ECF No. 6 at 17, 19-21; ECF No. 11 at 7-9), took place in 2023, after the relevant period of time considered here, (AR 33 (citing 1783-1786 (medical evidence regarding 2023 IQ testing))). As previously discussed, an ALJ is not required to consider evidence outside of the relevant period of disability. *See, e.g.*, *Mease*, 2018 WL 6521830, at *5; *Greco*, 2024 WL 1195707, at *1 n.2. Regardless, the ALJ considered this evidence, explaining that:

> In consideration for this evidence, the undersigned also found support for a moderate limitation in understanding, remembering, and applying information. Marked and extreme limitations in this domain are not supported considering the claimant's generally intact

16

> activities of daily living as well as observations from her treating providers during the relevant period that she appeared to have average intelligence and did not appear to have cognitive deficits.

(AR 36 (citing AR 1136-1167, 1233-1361, 1783-1786).)   The ALJ's decision "may not be overturned simply because the [p]laintiff disagrees with the ALJ's weighing of the evidence." *Candace D.*, 2024 WL 913218, at *8.

At bottom, "an ALJ does not need to use particular language or adhere to a particular format in conducting [her] RFC analysis" but rather "must merely 'articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Maria A. v. Comm'r Soc. Sec.*, Civ. No. 21-19431, 2025 WL 88349, at *14 (D.N.J. Jan. 13, 2025) (citations omitted). The ALJ's determination satisfies this standard here, as she considered a myriad of evidence regarding Plaintiff's asserted mental limitations and explained her reasoning for the RFC.

### B.   The ALJ's Step Five Determination

Plaintiff also argues that the ALJ's determination at step five—that Plaintiff could perform work existing in significant numbers in the national economy—was not based on substantial evidence. (ECF No. 6 at 18-21.)  Plaintiff asserts that because she "lacked the capacity found [in the RFC], then the finding that she could perform any work at the substantial gainful work activity level, past or alternative, cannot be sustained." (*Id.* at 19.)  Defendant responds that "[t]hese arguments largely re-package [Plaintiff's] assertion that her impairments required greater workplace limitations." (ECF No. 10 at 11.)  Because Plaintiff concedes that "Defendant is correct that the argument as to Step Five being invalid largely relies on the finding that the residual functional capacity upon which it is based is unsupported by substantial evidence," (ECF No. 11 at 9), and the Court finds that the ALJ's RFC is supported by substantial evidence, this argument necessarily fails.

However, even if the Court were to consider this argument, the Court finds that the ALJ did not err in determining that there were jobs existing in significant numbers in the national economy that Plaintiff could have performed. Plaintiff centers her argument on her contention that the ALJ refused to consider how Plaintiff's IQ could impact her work ability. (*See* ECF No. 6 at 19-21; ECF No. 11 at 9-13.) But as the Court previously discussed, the ALJ was not required to consider this evidence that post-dated the disability period, although the ALJ did still acknowledge Plaintiff's IQ testing from 2023. (AR 36 (citing AR 1783-1786).) *See, e.g.*, *Mease*, 2018 WL 6521830, at *5; *Greco*, 2024 WL 1195707, at *1 n.2.

Even if the ALJ were required to consider the medical evidence regarding Plaintiff's IQ, any such analysis she did was proper. Plaintiff argues that she did not have the "general learning ability" (GLA)[9] to perform the jobs suggested by the vocational expert due to her IQ. (*See* ECF No. 6 at 19-21.) But, as Defendant argues, a plaintiff's IQ does not correlate to a job's GLA level. (ECF No. 10 at 13.) *See, e.g.*, *Griffith v. Comm'r Soc. Sec.*, 582 F. App'x 555, 565 (6th Cir. 2014) ("[The plaintiff] improperly conflates I.Q. with General Learning Ability[.]"); *Christopher F. v. Kijakazi*, Civ. No. 21-516, 2022 WL 9169835, at *18 (D.N.J. Oct. 14, 2022) (holding that the plaintiff's assertion that he could not perform at a certain GLA level was conclusory, speculative, and not supported by the record evidence which included his IQ score). Plaintiff offers no response to this argument beyond a conclusory assertion that these cases are "wrong." (ECF No. 11 at 12.) When asked by Plaintiff's counsel at the hearing, the vocational expert also testified that IQ is

---

[9]    "General Learning Ability refers to aptitude ability or [t]he ability to catch on or understand instructions and underlying principles; the ability to reason and make judgments. The [DOT], which is commonly relied upon by ALJs in evaluating whether a claimant can perform other work, indicates the General Learning Ability that is required for each job." *Griffith v. Comm'r Soc. Sec.*, 582 F. App'x 555, 565 n.6 (6th Cir. 2014) (first alteration in original) (internal quotations and citation omitted).

"separate and different" from general learning ability and IQ can "be used as part of a disability determination *outside* of the purview of Social Security." (*Id.* at 84 (emphasis added).)  The ALJ permissibly relied upon the vocational expert's testimony that was consistent with the DOT and found, based on the limitations the ALJ found were established, Plaintiff could successfully perform work existing in significant numbers in the national economy.  (*Id.* at 78-79.)  *Sanabria v. Comm'r Soc. Sec.*, Civ. No. 15-8963, 2017 WL 436253, at *4 (D.N.J. Jan. 31, 2017) (finding Step Five analysis was supported by substantial evidence because "'[a] vocational expert may rely on the DOT, and the ALJ may rely on the [vocational expert's] testimony to the extent it is consistent with the DOT.'") (quoting *Estevez v. Comm'r Soc. Sec.*, Civ. No. 14-6337, 2016 WL 3381227, at *7 (D.N.J. June 8, 2016)).

As previously discussed, the ALJ considered and referenced evidence regarding Plaintiff's mental abilities.  (*See supra* Section III.A.2.)  Thus, the ALJ sufficiently articulated how the evidence in the record supported the RFC determination.  *See Maria A.*, 2025 WL 88349, at *14. "[T]he [c]ourt cannot now choose to re-weigh the evidence simply because Plaintiff does not agree with the ALJ's decision." *Brisbine*, 2020 WL 5759959, at *1 n.1.

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, the Commissioner's final decision is **AFFIRMED**.  An appropriate Order follows.

Dated: March 31, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE